IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRANDON BAKER          :          CIVIL ACTION
                       :
     v.                :
                       :
J. J. MORGAN, et al.   :          NO. 05-3690

MEMORANDUM AND ORDER

McLaughlin, J.                                    May 4, 2006

_____This case arises from a physical altercation on
September 14, 2003 between the pro se plaintiff, then an inmate
at SCI-Graterford, and one or more correctional officers.  The
plaintiff alleges that defendants Jeffrey Morgan, Jason
Dombrowsky, and Steven DeSau (the "correctional officers") used
or condoned the use of excessive force against him.[1]  He also
alleges that defendants David DiGuglielmo, the Superintendent of
SCI-Graterford, John Murray, the Deputy Superintendent for
Facilities Management, and Robert Duprey, a retired State Police
Captain, failed to investigate or take any action against the
correctional officers.[2]  The plaintiff further alleges that
defendant Dr. Richard Kosierowski failed to treat his injuries

_____

     [1]     The complaint names these defendants as J. J. Morgan,
J. Dombrosky, and Desau, respectively.

     [2]     The complaint names these defendants as Daniel
DiGugliemo, Murray, and Robert J. Duprey, respectively.

-1-

properly, and that defendants Michael Pisano, a physician's assistant, and Julie Knauer, the prison's health care administrator, conspired with Dr. Kosierowski to cover up that failure.[3]

The plaintiff has asserted claims against all of the defendants in their individual and official capacities under 42 U.S.C. § 1983, for violations of his First, Eighth, and Fourteenth Amendment rights. The plaintiff has also asserted civil rights conspiracy claims against all of the defendants. The plaintiff nominally asserted state law claims in the complaint, but has voluntarily dismissed any state law claims against most of the defendants. The plaintiff seeks a declaratory judgment that the defendants violated his Eighth Amendment rights, as well as compensatory and punitive damages from each defendant.

There are two motions pending before the Court: a Motion to Dismiss filed by Dr. Kosierowski and Mr. Pisano (the "Doctor Defendants"), and a Partial Motion to Dismiss filed by the three correctional officers, Superintendent DiGuglielmo, Deputy Superintendent Murray, Captain Duprey, and Ms. Knauer (the "Commonwealth Defendants").[4]

---

[3]     The complaint names Dr. Kosierowski and Mr. Pisano as Richard Koserowski, M.D. and Michael Pisano, M.D.

[4]     The Commonwealth Defendants have not attempted to "institute" the Commonwealth of Pennsylvania as a defendant in

The Court concludes that the following claims will be dismissed: (1) the First Amendment claims against all defendants; (2) the Eighth Amendment claims against Deputy Superintendent Murray, Captain Duprey, and Ms. Knauer; (3) the Fourteenth Amendment equal protection claims against all defendants; (4) the Fourteenth Amendment due process claims against all defendants; (5) the civil rights conspiracy claims against defendants other than the correctional officers; (6) any state law claims against any defendants; and (7) claims for money damages against the Commonwealth Defendants in their official capacities.

The Court concludes that the following claims will go forward: (1) the Eighth Amendment claims against the correctional officers, Superintendent DiGuglielmo, and Dr. Kosierowski; and (2) the civil rights conspiracy claim against the correctional officers.

I.   Facts

Accepting the facts alleged in the complaint as true, at the time of the events giving rise to this case, the plaintiff

---

this case, as the plaintiff believes.  (See Pl.'s Opp'n to Comm. Defs.' Mot. to Dismiss at 11-12.)  The term "Commonwealth Defendants" refers to the seven named defendants other than Dr. Kosierowski and Mr. Pisano.  The Court will use this term for ease of reference.

was housed in SCI-Graterford's Restricted Housing Unit.[5]   On September 14, 2003, the three defendant correctional officers escorted the plaintiff to a shower that did not work.   The plaintiff informed the block sergeant of the problem and was told that he would be taken to a working shower.   Nevertheless, the officers subsequently told the plaintiff that he had to return to his cell without showering because his shower time was up. (Compl. ¶¶ 14, 21.)

The plaintiff, wearing only shower shoes and a towel, was handcuffed behind the back.   As the officers were escorting the plaintiff back to his cell, he looked over his right shoulder to attract the block sergeant's attention.   The officers grabbed the plaintiff around the legs and threw him to the floor, head first.   The plaintiff lost consciousness and sustained a cut on his forehead.   When the plaintiff regained consciousness, he was lying naked in a pool of blood.   (Id. ¶¶ 14, 22.)

Later that day, Officer Morgan issued the plaintiff a misconduct report for attempting to pull away from and kick the

---

[5]   When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court accepts all facts and allegations listed in the complaint as true and construes them in the light most favorable to the plaintiff.   H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 249 (1989); Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).   "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."   Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

-4-

officers.  The misconduct report indicated that the plaintiff had been seen by prison medical staff.  (Id. ¶ 23, Ex. A.)

Dr. Kosierowski stitched up the plaintiff's head wound, but the stitches fell out within twenty-four hours.  The plaintiff's wound reopened, eventually leaving a large scar. When the plaintiff filed a grievance complaining about the stitches falling out, Ms. Knauer replied that the stitches were only meant to be temporary.  (Id. ¶¶ 33-34.)

The plaintiff also experienced a loss of vision in his right eye.  Dr. Kosierowski did not look into the plaintiff's complaints, however, and the plaintiff was not seen by an eye specialist for over one month.  The plaintiff lost vision in his right eye for approximately three weeks.  (Id. ¶ 36.)

The plaintiff filed a grievance alleging that the correctional officers assaulted him, but the grievance was denied.  Superintendent DiGuglielmo rejected the plaintiff's subsequent appeal.  (Id. ¶ 31.)

II.  Analysis

The primary question before the Court is whether the plaintiff has stated a claim under 42 U.S.C. § 1983 for a deprivation of his constitutional rights.  The Court must also determine whether the plaintiff has stated any claims under state law.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and show that the deprivation was committed by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  Here, the plaintiff has alleged that the defendants violated his First, Eighth, and Fourteenth Amendment rights, and engaged in various civil rights conspiracies against him.  The defendants do not dispute that they were state actors, but argue that the plaintiff has failed to state a claim for any deprivation of his constitutional rights other than an Eighth Amendment claim against the correctional officers.

A.   First Amendment Claims

Even reading the pro se complaint liberally, the plaintiff has not stated a First Amendment claim.  The plaintiff has not alleged any facts showing that the defendants restrained his freedom of speech or retaliated against him in violation of the First Amendment.  At most, the plaintiff claims that he "feared [the correctional officers] knew he was pressing charges and would attempt to harm him in order to stop him from pursuing said charges."  (Compl. ¶ 36 (emphasis added).)

To state a First Amendment retaliation claim, however, the plaintiff must not only allege that he engaged in

-6-

constitutionally protected conduct; he must allege that he suffered some adverse action at the hands of prison officials as a result.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  The plaintiff has not alleged that any of the defendants actually took any adverse action against him after he pressed charges.[6]

B.   Eighth Amendment Claims

The plaintiff has alleged that each of the defendants violated his Eighth Amendment rights by use of excessive force, deliberate indifference to his health or safety, and/or failure to provide adequate medical care.  The Eighth Amendment claims against the correctional officers, Superintendent DiGuglielmo, and Dr. Kosierowski will go forward.

---

[6]     In his opposition brief to the Commonwealth Defendants' motion to dismiss, the plaintiff argues that the defendants violated his "1st Amendment procedur[al] due process right, to present evidence, to call witnesses and to testify before a prison hearing examiner, by use of assaultive measures with no due process before he was slammed to the cement floor."  (Pl.'s Opp'n to Comm. Defs.' Mot. to Dismiss at 11.)

It is not clear whether the plaintiff is referring to the alleged assault by the correctional officers, the issuance of the misconduct, and/or prison officials' treatment of his grievance.  In any event, the plaintiff has not stated a First Amendment claim.  Any claim arising out of the alleged use of excessive force is more properly analyzed under the Eighth Amendment.  Any claim arising out of the misconduct or grievance proceedings is more properly analyzed under the Fourteenth Amendment.

<u>      </u>       1.   <u>Correctional Officers Morgan, Dombrowsky, and
                  Desau</u>

     Prison officials are liable under the Eighth Amendment
for using excessive force against a prisoner, or failing to
intervene in the use of excessive force when they have a
reasonable opportunity to do so.  <u>Smith v. Mesinger</u>, 293 F.3d
641, 650 (3d Cir. 2002).  The Commonwealth Defendants have not
moved to dismiss the excessive force claims against the three
correctional officers.  These claims go forward.


          2.   <u>Superintendent DiGuglielmo</u>

     Prison officials may also be liable under the Eighth
Amendment if they are deliberately indifferent to an excessive
risk to inmate health or safety.  <u>Farmer v. Brennan</u>, 511 U.S.
825, 837 (1994).  Deliberate indifference is a subjective, not
objective, standard; to be held liable, "the official must both
be aware of facts from which the inference could be drawn that a
substantial risk of serious harm exists, and he must also draw
the inference."  <u>Id.</u>

     The plaintiff alleges that Superintendent DiGuglielmo
acted with deliberate indifference because he knew or should have
known that the plaintiff's life was in danger in the Restricted
Housing Unit, but failed to remove him from that area.  (Compl. ¶
29).  To the extent that the plaintiff bases his claim on what
Superintendent DiGuglielmo actually knew about the risk to the

-8-

plaintiff's safety, the plaintiff has stated sufficient facts to survive a motion to dismiss.  The plaintiff need not allege that Superintendent DiGuglielmo knew that this inmate in particular was at risk of harm by these particular correctional officers; it is sufficient for the plaintiff to allege that Superintendent DiGuglielmo knew that prisoners in the plaintiff's situation faced this type of risk.  See Farmer, 511 U.S. at 843.

### 3.  Dr. Kosierowski

The plaintiff has also stated an Eighth Amendment claim against Dr. Kosierowski.  Deliberate indifference to a prisoner's serious medical needs constitutes a violation of the Eighth Amendment.  West v. Atkins, 487 U.S. at 48.  A prison official acts with deliberate indifference if he or she ignores objective evidence that a plaintiff has a serious need for medical care, or delays necessary medical treatment for non-medical reasons. Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).  Allegations of negligence or medical malpractice alone, however, do not constitute deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

The plaintiff alleges that Dr. Kosierowski failed to stitch up his head wound properly, as evidenced by the fact that the stitches fell out within twenty-four hours.  Reading the pro

se complaint liberally, the plaintiff has also alleged that Dr. Kosierowski knew about the plaintiff's loss of vision, but failed to act on it for over one month.[7]  (Compl. ¶¶ 34, 36.)

Although some of the plaintiff's allegations appear to sound in negligence, the Court finds that the plaintiff has made sufficient allegations regarding Dr. Kosierowski's failure to respond to the plaintiff's serious medical needs to survive a motion to dismiss.

### 4.   Deputy Superintendent Murray and Captain Duprey

The plaintiff has not stated an Eighth Amendment claim against Deputy Superintendent Murray or Captain Duprey, however. The complaint does not allege that either of these defendants participated in, or had a reasonable opportunity to intervene against, any excessive use of force against the plaintiff.[8]  Nor does the complaint allege that either of these defendants knew of

---

[7]     In his opposition to the Doctor Defendants' motion to dismiss, the plaintiff also argues that the defendants were deliberately indifferent when they failed to re-close the wound after it reopened.  (Pl.'s Opp'n to Doctor Defs.' Mot. to Dismiss at 3.)

[8]     In his Traverse to the Commonwealth Defendants' Motion to Dismiss, the plaintiff alleges that "Defendant Murray is directly involved[,] knew and should have known of the assault." The plaintiff's reference to a letter he wrote to Deputy Superintendent Murray on September 15, 2003, however, shows only that the plaintiff informed and tried to involve Deputy Superintendent Murray the day after the correctional officers' alleged use of excessive force.  (Pl.'s Traverse to Defs.' Mot. to Dismiss at 9 and Ex. H.)

an excessive risk to the plaintiff's safety.  At most, the
complaint claims that these defendants conspired with other
defendants in failing to investigate _after_ the alleged assault.
(Compl. ¶¶ 24, 32.)[9]


### 5.  Health Care Administrator Julie Knauer

Nor has the plaintiff stated an Eighth Amendment claim
against Ms. Knauer.  The plaintiff alleges that when he filed a
grievance about his stitches falling out, Ms. Knauer responded
that the stitches were only meant to be temporary.[10]  (Compl. ¶
33.)  In his response to the Commonwealth Defendants' motion to
dismiss, the plaintiff adds that Ms. Knauer did not assist him
when he wrote to her.  (Pl.'s Opp'n to Comm. Defs.' Mot. to
Dismiss at 6.)

When a prisoner is under the care of a physician, non-
medical prison officials can be charged with deliberate
indifference only if they believe or have a reason to believe
that the physician or physician assistants are mistreating or not
treating a prisoner.  Spruill v. Gillis, 372 F.3d 218, 236 (3d
Cir. 2004).  The plaintiff has not alleged that Ms. Knauer had

---

[9]     The Court addresses the conspiracy allegations in
Section E, below.

[10]     The plaintiff also alleges that Ms. Knauer conspired
with Dr. Kosierowski and Mr. Pisano to cover up Dr. Kosierowski's
failure to properly stitch up the plaintiff's wound; the Court
addresses these conspiracy allegations in Section E.

any reason to believe that the medical staff was not treating or mistreating him.

      6.   <u>Physician's Assistant Michael Pisano</u>

      Finally, the plaintiff has not stated an Eighth Amendment claim against Mr. Pisano.  The plaintiff's sole allegation against Mr. Pisano is that he "conspired with defendant Koserowski to <u>cover up</u> the actions or inactions to properly close plaintiff's head wound . . . ."  (Compl. ¶ 35.) The plaintiff has not alleged that Mr. Pisano himself was deliberately indifferent to the plaintiff's serious medical needs.

    C.   <u>Fourteenth Amendment Equal Protection Claims</u>

      The plaintiff has broadly asserted that each of the defendants violated his Fourteenth Amendment rights.  Even reading the complaint liberally, however, the plaintiff has only arguably asserted an equal protection claim against Captain Duprey, and due process claims against the correctional officers, Superintendent DiGuglielmo, Deputy Superintendent Murray, and Captain Duprey.

      To bring a successful § 1983 action based on the denial of equal protection, a plaintiff must prove the existence of purposeful discrimination, i.e, that he was treated differently

from similarly situated individuals.  <u>Shuman v. Penn Manor Sch.</u>
<u>Dist.</u>, 422 F.3d 141, 151 (3d Cir. 2005), citing <u>Andrews v. City</u>
<u>of Phila.</u>, 895 F.2d 1469, 1478 (3d Cir. 1990).

      The complaint alleges that Captain Duprey discriminated
against the plaintiff by failing to investigate the alleged
assault "as is done in the case of similarly situated citizens
who make similar complaints."  (Compl. ¶ 24.)  The complaint does
not posit any alleged basis for discrimination, however.  In his
traverse to the Commonwealth Defendants' motion to dismiss, the
plaintiff argues that the state troopers discriminated against
him by refusing to investigate his assault allegations, even
though they regularly investigate allegations that an inmate
assaulted a guard or another inmate.  (Pl.'s Traverse to Defs.'
Mot. to Dismiss at 8.)  Even if the Court assumes that Captain
Duprey discriminated against the plaintiff on the basis of his
incarcerated status, the plaintiff has not stated an equal
protection claim because inmates are not a protected class.  <u>See</u>
<u>Abdul-Akbar v. McKelvie</u>, 239 F.3d 307, 317 (3d Cir. 2001).[11]

---

      [11]   In his traverse to the Commonwealth Defendants' motion
to dismiss, the plaintiff also argues that the correctional
officers discriminated against him when they threw him to the
floor because similarly situated "Black and Spanish prisoners"
were taken to the shower without being so treated.  (Pl.'s
Traverse to Defs.' Mot. to Dismiss at 18.)  Even if the plaintiff
had made this allegation in the complaint proper, the plaintiff
would not have stated a equal protection claim against the
officers because the plaintiff has not alleged his own race.

D.   <u>Fourteenth Amendment Due Process Claims</u>

The plaintiff also alleges that Superintendent DiGuglielmo, Deputy Superintendent Murray, and Captain Duprey (in conspiracy with the correctional officers) violated his Fourteenth Amendment due process rights by failing to investigate or prosecute the officers for the assault.  (Compl. ¶¶ 24, 30, 32.)

The plaintiff does not have a protected property or liberty interest in having his complaints investigated or the subject of his complaints prosecuted.  Prison officials' failure to respond to a grievance does not give rise to a due process violation.  <u>See, e.g.</u> <u>Young v. Medden</u>, 03-CV-5432, 2006 U.S. Dist. LEXIS 6885 at *63 (E.D. Pa. Feb. 23, 2006); <u>Anderson v. Pennsylvania</u>, 03-CV-5058, 2005 U.S. Dist. LEXIS 35761 at *9 (E.D. Pa., Dec. 21, 2005); <u>Scantling v. Vaughn</u>, 03-CV-0067, 2004 U.S. Dist. LEXIS 1995 at *27 n. 9 (E.D. Pa., Feb. 12, 2004).

The plaintiff does have a constitutional right to have meaningful access to the courts.  <u>Lewis v. Casey</u>, 518 U.S. 343, 350-55 (1996); <u>Tourscher v. McCullough</u>, 184 F.3d 236, 242 (3d Cir. 1999).  To state a due process claim based on access to the courts, an inmate must allege that the prison officials' actions actually interfered with his ability to pursue his legal claims. <u>Id.</u>  The plaintiff has not made such an allegation here.

-14-

E.    Conspiracy Claims

        Throughout the complaint, the plaintiff alleges that
the defendants conspired with each other in various ways.  The
plaintiff alleges that the correctional officers conspired with
each other 1) to use excessive force against him, and 2) to
submit a false incident misconduct report to cover up their
excessive use of force.  The plaintiff also alleges that Captain
Duprey conspired with "other SCIG employee defendants" in failing
to investigate the incident, and that Superintendent DiGuglielmo
and Deputy Superintendent Murray conspired with the officers and
Captain Duprey in failing to prosecute the officers.  Finally,
the plaintiff alleges that Ms. Knauer and Mr. Pisano conspired
with Dr. Kosierowski to cover up his failure to close the
plaintiff's head wound properly.  (Compl. ¶¶ 23-24, 28, 30, 32-
33, 35.)  The Court will treat these allegations as civil rights
conspiracy claims under 42 U.S.C. § 1983.[12]

        Both groups of defendants have moved to dismiss the
conspiracy claims for failure to plead the conspiracies with
particularity.  Plaintiffs bringing civil rights claims are not
required to satisfy heightened fact-pleading requirements,

_____

        [12]   The plaintiff does not state a claim for conspiracy
under 42 U.S.C. § 1985 because he does not allege a conspiracy
(1) to prevent persons from holding public office, (2) to
intimidate federal court parties, witnesses, or jurors, or (3)
motivated by racial or other class-based animus.  See Ridgewood
v. Bd. of Educ., 172 F.3d 238, 253 (3d Cir. 1999).

-15-

however.  Leatherman v. Tarrant County Narcotics Intelligence &
Coordination Unit, 507 U.S. 163, 168 (1993); Alston v. Parker,
363 F.3d 229, 233 (3d Cir. 2004).  "[A] civil rights complaint is
adequate where it states the conduct, time, place, and persons
responsible."  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.
2005).

        Even under the liberal notice pleading standard, only
one of the plaintiff's conspiracy claims is viable – that against
the correctional officers for conspiring to use excessive force
against him.  The plaintiff has sufficiently stated the relevant
conduct, time, place, and persons responsible for that claim to
survive a motion to dismiss.

        The plaintiff's other claims are not viable because
they do not involve conspiracies to violate a constitutional
right.  Even if the correctional officers did file a false
conduct report to cover up their own excessive use of force, the
filing of a false misconduct report does not, in itself,
constitute a deprivation of a constitutional right.  Smith v.
Mensinger, 293 F.3d 641, 654 (3d Cir. 2002).  The plaintiff must
show that the false report resulted in the deprivation of a
protected liberty or property interest.  Here, the plaintiff has
not even alleged that the misconduct report resulted in any
disciplinary action against him.

        Likewise, the plaintiff does not state a civil rights

-16-

conspiracy claim against Superintendent Digugliemo, Deputy Superintendent Murray, and Captain Duprey because, as explained above, the plaintiff does not have a constitutional right to have his grievances or complaints investigated or prosecuted.

Finally, the plaintiff's cover up conspiracy claim against Ms. Knauer and the Doctor Defendant fails because an attempt to cover up improper conduct does not, in itself, constitute a constitutional violation.  It only rises to the level of a constitutional violation if it implicates a fundamental right, such as access to the courts.  See id.; Estate of Smith v. Marasco, 318 F.3d 497, 511 (3d Cir. 2003).  Here, the plaintiff has not alleged that Ms. Knauer and the Doctor Defendants' conspiracy to cover up Dr. Kosierowski's improper treatment of the plaintiff's head wound was motivated by, or had the effect of, depriving the plaintiff of meaningful access to the courts, or any other fundamental right.


F.   State Law Claims

The complaint asserts that the Court has supplemental jurisdiction over the plaintiff's state law tort claims, but does not explicitly set forth any state law causes of action.  The plaintiff has voluntarily dismissed, with prejudice, any state law claims against correctional officer Morgan, Superintendent DiGuglielmo, Deputy Superintendent Murray, Captain Duprey, and

Ms. Knauer (Doc. No. 21).

The plaintiff's voluntary dismissal form did not address correctional officers Dombrowsky and DeSau or the Doctor Defendants.  It is not clear whether the plaintiff omitted these defendants intentionally.  In any event, the plaintiff has not stated any state law causes of action against them; the Court will dismiss the claims against these defendants without prejudice.[13]

> G.   Claims Against the Commonwealth Defendants in Their Official Capacities

The plaintiff has asserted claims against all of the defendants in their official, as well as individual, capacities. The Commonwealth Defendants have moved to dismiss the claims

---

[13]   The Doctor Defendants argue that the plaintiff is barred from asserting any medical malpractice claims because he has not filed a certificate of merit, as required by Rule 1042.3 of the Pennsylvania Rules of Civil Procedure.  Even if the Court were to assume that Rule 1042.3 applies to this action, the Rule would not require the Court to dismiss the plaintiff's putative malpractice claims with prejudice.  See Scaramuzza v. Sciolla, 345 F. Supp. 2d 508, 511 (E.D. Pa. 2004) (excusing plaintiff's delay in filing certificate because the United States Court of Appeals for the Third Circuit has not expressly determined that Pa. R. Civ. P. 1042 shall be applied as substantive law in diversity actions); Rodriguez v. Smith, 03-CV-3675, 2005 U.S. Dist. LEXIS 12237 at *29 (E.D. Pa. June 21, 2005) (finding that prisoner plaintiff's failure to timely file a certificate was excusable "particularly in light of his pro se status" and dismissing medical malpractice claim without prejudice).

against each of them in their official capacities.[14]

The plaintiff's claims for money damages against the Commonwealth Defendants in their official capacities must be dismissed.  States and state officials may not be sued as "persons" for damages under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Each of the Commonwealth Defendants are state officials.  See 71 P.S. § 61 (the Pennsylvania State Police and the Department of Corrections perform the executive and administrative work of the Commonwealth); Scantling v. Vaughn, 03-CV-0067, 2004 U.S. Dist. LEXIS 1995 at *29-30 (E.D. Pa. Feb. 12, 2004) ("State agencies, such as the Department of Corrections [and] SCI-Graterford . . . enjoy the same level of immunity as the state.").

To the extent that the plaintiff has requested prospective or injunctive relief from the Commonwealth Defendants in their official capacities, however, these claims may go forward.  See Will, 491 U.S. at 71 n. 10 ("[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.") (internal quotations omitted); Koslow v. Pennsylvania,

_____

[14]    The Doctor Defendants have not argued that they are state officials, and have not specifically moved to dismiss the claims against them in their official capacities.  Therefore, these claims, to the extent that they are otherwise viable, will go forward.

302 F.3d 161, 168 (3d Cir. 2002) (purely prospective relief against state officials for ongoing violations of federal law is available under the "legal fiction" of <u>Ex parte Young</u>).

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRANDON BAKER              :          CIVIL ACTION
                           :
       v.                  :
                           :
J. J. MORGAN, et al.       :          NO. 05-3690

ORDER

        AND NOW, this 4th day of May, 2006, upon consideration
of defendants Richard Koserowski and Michael Pisano's Motion to
Dismiss (Doc. No. 12), defendants J. J. Morgan, J. Dombrosky,
Desau, Robert J. Duprey, Julie Knauer, Daniel Digugliemo, and
Murray's Motion to Partially Dismiss (Doc. No. 20), and the
plaintiff's oppositions thereto, IT IS HEREBY ORDERED that the
motions are GRANTED, in part, and DENIED in part, consistent
with, and for the reasons stated in, a memorandum of today's
date.

                              BY THE COURT:


                              /s/ Mary A. McLaughlin
                              MARY A. McLAUGHLIN, J.